IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD STEPHEN FAIRCHILD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-01-1550-T |
| ) | |
| MARTY SIRMONS, Warden, Oklahoma ) | |
| State Penitentiary, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner, a state prisoner currently facing execution of a sentence of death, appears

with counsel and petitions for a Writ of Habeas Corpus pursuant to 28 U.S.C.A. § 2254,

challenging his conviction in the District Court of Oklahoma County, Case No. CF-93-7103.

Respondent has responded to Petitioner's *Petition for a Writ of Habeas Corpus by a Person*

*in State Custody Pursuant to Title 28 United States Code, § 2254* (hereinafter "Petition.")[1]

Petitioner has replied to this response. The state court record has been supplied.[2]

## I. PROCEDURAL HISTORY

Petitioner was convicted by jury in the District Court of Oklahoma County, State of

Oklahoma, Case No. CF-93-7103, of one count of First Degree Murder for the death of three-

---

[1] References to the parties' pleadings shall be as follows: Petitioner's *Petition for a Writ of Habeas Corpus* shall be cited as (Pet. at ___.); Respondent's *Response to Petition for Writ of Habeas Corpus* shall be cited as (Resp. at ___.); Petitioner's *Reply* shall be cited as (Reply at ___.);

[2] The trial court's original record shall be cited as (O.R. at ___.). The trial transcript shall be cited as (Tr., Vol. ___, p. ___.).

year-old Adam Broomhall.  Adam Broomhall's death occurred on or about November 14, 1993.  The jury recommended the imposition of a death sentence for First Degree Murder, finding the existence of one aggravating circumstance:  the murder was especially heinous, atrocious, or cruel.

Petitioner appealed his convictions and his death sentence to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA").  The OCCA affirmed Petitioner's convictions and death sentence in a published opinion dated December 7, 1999, as corrected on Denial of Rehearing May 11, 2000.  Fairchild v. State, 998 P.2d 611 (Okla. Crim. App. 2000).  Petitioner's subsequent Petition for Writ of Certiorari to the United States Supreme Court was denied on May 21, 2001.  Fairchild v. Oklahoma, 532 U.S. 1039 (2001).  Petitioner filed an Application for Post-Conviction Relief which was denied by the OCCA in an unpublished opinion dated October 25, 2000.  (Case No. PCD-1998-31.)

## II. FACTUAL BACKGROUND

Under 28 U.S.C. § 2254(e), when a federal district court addresses "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  For the purposes of consideration of the present Petition, the Court provides and relies upon the following synopsis from the OCCA's opinion summarizing the evidence presented at Petitioner's trial.  Following review of the record, trial transcripts, and the admitted exhibits, the Court finds this summary by the OCCA is adequate and accurate. The Court therefore adopts the following summary as its own.

2

Richard Stephen Fairchild was tried by jury and convicted of Murder in the First Degree, 21 O.S.1991, § 701.7(C), in Oklahoma County District Court Case No. CF-93-7103. The jury found one aggravating circumstance, that the murder was especially heinous, atrocious or cruel, and set punishment at death. The Honorable Major Wilson, District Judge, imposed the death sentence. The Appellant is before the Court on original appeal.

Three-year-old Adam Broomhall, who weighed 24 pounds, died as a result of brain damage caused when he was thrown against the vertical surface of the folded-down wing of a drop-leaf table by his mother's live-in boyfriend, Richard Stephen Fairchild. The injury occurred in the early morning hours of Sunday, November 14, 1993, while Adam's mother, Stacy Broomhall, was asleep in the bedroom. Adam never regained consciousness and he died later that morning. Fairchild had been living with Stacy and her three children in Midwest City.

The day before Adam was killed, Fairchild and Stacy drank beer most of the afternoon and evening. Fairchild told police he had started drinking beer about 2:00 p.m. and had consumed about twelve cans of beer by 9:00 p.m. That evening they visited Stacy's mother, Jena Fickland, who lived in north Oklahoma City. The children watched TV and ate snacks in one room while the adults watched TV and drank beer in another. When Fairchild and Stacy were ready to leave, Fickland insisted they were both too intoxicated to drive and arranged for her seventeen-year-old daughter, Charity Wade, to drive them home.

Originally Ms. Wade planned to stay overnight at Fairchild's and Stacy's residence. These plans changed when Fairchild made sexual advances toward her. She put the kids to bed and called a cab to take her home. Fairchild got angry and got out a baseball bat. He told Charity that if someone other than a cab driver came to pick her up, he was going to beat him to death. He tried to grab her arm and told her she wasn't leaving. She was finally able to leave in the cab sometime before 10:30 p.m. She had checked on Adam before she left, and he was sleeping in his bed.

Approximately three hours later, Adam woke up crying and got out of bed. Fairchild told Adam to "hush it up" and struck him in the mouth, rupturing the inside of his upper lip. Adam still did not stop crying. Fairchild then held Adam's chest and then his buttocks up against a hot wall heater. Adam suffered severe second-degree grid-patterned burns on his chest and bottom, and was now screaming.

3

Fairchild admitted to Detective Burton a couple of days later, "I think I pushed him up against the heater and held him up there," and, "The more he screamed, the more I just kept on hitting him." Another blow struck Adam's left ear and ruptured his eardrum. Finally, Fairchild threw Adam against the drop-leaf dining table, and when Adam hit the floor, he stopped screaming. He also stopped breathing.

Fairchild went in the bedroom, woke up Stacy Broomhall, and called 911. Paramedics arrived shortly and then the police. Fairchild claims he was intoxicated. However, he was not too drunk to write out a legible, detailed, coherent story in his own handwriting, claiming Adam was running in the house and "ran right into the table."

Adam was rushed to Children's Hospital in Oklahoma City where every effort to save his life failed, and he was pronounced dead later that morning. An autopsy established that injury to Adam's head had resulted in severe hemorrhaging and swelling in the right half of Adam's brain and had caused his death. Adam had sustained approximately twenty-six blows to his body including several to his head.

Fairchild, 998 P.2d at 615-16.

Additional facts and testimony were submitted to the jury at trial not contained herein or in the OCCA's summary. Any additional facts necessary for a determination of Petitioner's claims will be set forth in detail throughout this Opinion where applicable.

## III. PETITIONER'S CLAIMS FOR RELIEF

### A. GENERAL CONSIDERATIONS:  Exhaustion and the Procedural Bar

Federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977). In every habeas case, the court must first consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and correct alleged

violations of state prisoner's federal rights." <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991).  Generally, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal.  Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion.  <u>Coleman</u>, 501 U.S. at 735 n.1 (citations omitted).

Habeas relief may also be denied if a state disposed of an issue on an adequate and independent state procedural ground.  <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Romero v. Tansy</u>, 46 F.3d 1024, 1028 (10th Cir. 1995); <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1353 (10th Cir. 1994).  A state court's finding of procedural default is deemed "'independent if it is separate and distinct from federal law.'"  <u>Id.</u> (<u>quoting</u> <u>Andrews v. Deland</u>, 943 F.2d 1162, 1188 n.40 (10th Cir. 1991)); <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75, 107 S.Ct. 1087, 84 L.Ed.2d 53 (1985); <u>see also</u>.  A state court's application of a procedural bar will be excused where a petitioner can show either:  1) cause for the default and resulting prejudice; or 2) that a fundamental miscarriage of justice would occur if the claims were not addressed in the federal habeas proceeding.  <u>Coleman</u>, 501 U.S. at 749-50.

## B.  THE STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), in order to obtain federal habeas relief once a state court has adjudicated a particular claim on the merits, Petitioner must demonstrate that the adjudication:

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1-2).

The Supreme Court defined "contrary to" as a state court decision that is "substantially different from the relevant precedent of this Court." Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring and delivering the opinion of the Court). A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 406. The "unreasonable application" prong comes into play when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

## C.    GROUNDS FOR RELIEF

Ground 1:    Due Process and Equal Protection.

In his first ground for relief, Petitioner claims the OCCA's determinations regarding the requisite intent for child-abuse murder and the appropriateness of voluntary intoxication

and lesser included offense instructions were error and a change of law, violating his due process and equal protection rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[3]   Respondent responds that Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

The analysis of Petitioner's claims must focus on the law at the time the crimes were committed. Rogers v. Tennessee, 532 U.S. 451, 464 (2001); Bouie v. City of Columbia, 378 U.S. 347, 354 (1964).  Adam Broomhall died on November 14, 1993.  The gravamen of Petitioner's claim centers on alleged inconsistencies regarding the necessary intent for the crime of child abuse murder contained in the statutes and jury instructions.  As of November 1993, First Degree Murder of Child was defined as:

> A person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person or who shall willfully cause, procure or permit any of said acts to be done upon the child pursuant to Section 843 of this title.

21 O.S. § 701.7(C).  Section 843 stated as of November 1993:

> Any parent or other person who shall willfully or maliciously injure, torture, maim, use unreasonable force upon a child under the age of eighteen (18), or sexually abuse such child, as those terms are defined by Section 845 of this title or who shall cause, procure or permit any of said acts to be done, shall upon conviction be punished by imprisonment in the State Penitentiary . . . .

21 O.S. § 843.

---

[3]   Petitioner's claims regarding voluntary intoxication and lesser included offense instructions will be addressed by the Court in its determination of Petitioner's third ground for relief.

Based upon those statutes, the jury was instructed in Instruction Numbers 6 and 7 on

the elements of the crime and the applicable definitions:

### MURDER IN THE FIRST DEGREE - ELEMENTS

No person may be convicted of MURDER IN THE FIRST DEGREE
unless the State has proved beyond a reasonable doubt each element of the
crime.  These elements are:

| | |
|---|---|
| First, | the death of a child under the age of 18 resulting from; |
| Second, | willful or malicious; |
| Third, | injuring, torturing, maiming or using unreasonable force; |
| Fourth, | the death was caused by the defendant. |

(O.R. at 729.)

### DEFINITIONS

Malicious - The term imports a wish to vex, annoy, or injure another
person.
Unreasonable Force - More than that ordinarily used as a means of
discipline.
Wilful - Purposeful.  "Wilful" does not require any intent to violate the
law, or to injure another, or to acquire any advantage.

(O.R. at 730.)

Petitioner claims the OCCA changed the law on child abuse murder by deleting the

intent to injure requirement and replacing it with a general requirement of volitional action,

thereby precluding his voluntary intoxication defense and lesser included offense

instructions.[4]  On appeal, the OCCA determined that the 1991 state court opinion of

Workman v. State, 824 P.2d 378, 383 (Okla. Crim. App. 1991)(citing Drew v. State, 771

---

[4]  Under Oklahoma law, voluntary intoxication is a defense only to specific intent crimes,
and not crimes of general intent. Fairchild, 998 P.2d at 618 (citing Kreijanovsky v. State, 706 P.2d
541, 544 (Okla. Crim. App. 1985).

P.2d 224 (Okla. Crim. App. 1989)), was dispositive on the issue of intent, stating that the mens rea for section 701.7(C) was found in 21 O.S. § 843 under the general intent of either "willfully" or "maliciously". <u>Fairchild</u>, 998 P.2d at 618-19.  Accordingly, since the statute was a general intent crime, and not one of a specific intent, the defense of voluntary intoxication was not applicable or proper. <u>Id.</u> at 619.  After a thorough analysis of its previous case law[5], the OCCA stated that the case relied upon by Petitioner for the proposition that child abuse murder had a specific intent element of an intent to injure[6] was decided subsequent to the death of Adam Broomhall and could not have been relied upon by Petitioner or applied in his case. <u>Id.</u> at 622.  The state court held:

> We clarify our previous opinions in <u>Watkins</u>, <u>Revilla</u>, <u>Hockersmith</u>, <u>Bannister</u>, and <u>Grady</u> to specify that the "intent to injure" mentioned in those cases means only that general intent included within the terms "willfully" or "maliciously." Thus the use of the term "willful" with "injure" in 21 O.S.1991, § 701.7(C) does not require a specific intent to injure, but only a general intent, included in the term willfully, to commit the act which causes the injury.

<u>Id.</u> at 622-23.

It should first be noted that "state courts are the ultimate expositors of state law", <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975)(<u>citing</u> <u>Murdoch v. City of Memphis</u>, 20 Wall. 590, 22 L.Ed. 429 (1875)); <u>Winters v. New York</u>, 333 U.S. 507 (1948), and that federal courts are bound by the state court's constructions except in extreme circumstances. <u>Mullaney</u>, 421 U.S. at 691.  Absent some compelling argument that the interpretation violates

---

[5]  <u>Fairchild</u>, 998 P.2d at 618-23.

[6]  <u>Hockersmith v. State</u>, 926 P.2d 793 (Okla. Crim. App. 1996)

the federal constitution, this Court may not on habeas review disturb a state court's decision in this regard.  See Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir.), cert denied, 513 U.S. 926 (1994)("We will not second guess a state court's application or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law").

At various times, Petitioner's claim has been cast in a light of an ex post facto claim, and indeed was partially treated as such by the OCCA.  Petitioner's arguments implicate due process concerns instead, however, as Petitioner challenges the OCCA's determination rather than a legislative act.  See Hawkins v. Mullin, 291 F.3d 658, 664 n. 2 (10th Cir. 2002)(citing Rogers v. Tennessee, 532 U.S. 451, 453, 456 (2001)).

> "[A] criminal statute must give fair warning . . . ." Bouie, 378 U.S. at 350, 84 S.Ct. 1697.  "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, [then the construction] must not be given retroactive effect." Id. at 354, 84 S.Ct. 1697 (further quotation omitted).  "The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability." Johnson v. Kindt, 158 F.3d 1060, 1063 (10th Cir.1998).

Hawkins, 291 F.3d at 664-65.

The Tenth Circuit has stated that an inquiry and determination regarding an unforeseeable judicial expansion of criminal liability relies on two standards derived from the Supreme Court in Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964).  McDonald v. Champion, 962 F.2d 1455, 1458 (10th Cir. 1992).  The first is whether the statute is "narrow and precise" on it face.  If it is, "'any judicial expansion of that statute beyond its own terms will be considered unforeseeable.'" Id. (citing Devine v. New Mexico Dept. of

Corrections, 866 F.2d 339, 345 (10th Cir. 1989)(citations omitted)).  Further, a judicial interpretation of a statute may not be applied retroactively if the state court's construction was so "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue' as to prevent its application retroactively." Id. (quoting Lopez v. McCotter, 875 F.2d 273, 276 (10th Cir. 1989)(quoting Bouie, 378 U.S. at 354.)).

In McDonald, the petitioner claimed that an Oklahoma Court of Criminal Appeal's construction interpreting Oklahoma's felony murder statute to include the underlying crime of attempted robbery, decided eleven days after his offense, violated his due process rights. The Tenth Circuit used the Supreme Court's analysis in Bouie and determined the statute was not "narrow and precise", because it could not be said that a potential defendant would have "no reason even to suspect" that if he killed someone while attempting to commit a robbery he could not be punished for first degree murder. Id. at 1459.  The Court then determined that Oklahoma's construction of its first degree felony murder statute was not so unexpected and indefensible as to make its application violative of due process, as the OCCA's determination reasonably interpreted the statutory language and there was support in prior interpretive state case law. Id. at 1462-63.

In the instant case, the Court does not find the child abuse murder statute to be narrow and precise on its face, making any asserted judicial expansion unforeseeable.  The statute, at the very least, gives some notice that the death of a child resulting from the general intent to injure or abuse could result in punishment for first degree murder.  Further, the OCCA's interpretation of general intent was not so unexpected and indefensible as to make its

11

application violative of state law.  Hockersmith, primarily relied upon by Petitioner, was decided well after Petitioner's offense and his trial, and was not applied to Petitioner. Instead, the OCCA analyzed its case law effective at the time of the offense and clarified its decisions to specify that the intent to injure mentioned in those cases meant only a general intent included within willfully or maliciously to commit the act which causes the injury. Fairchild, 998 P.2d at 622-23.

In Drew v. State, 771 P.2d 224 (Okla. Crim. App. 1989), the OCCA held that § 701.7(C) was not unconstitutional and that when the state uses that statute for a murder conviction, it must establish all the elements of child abuse under § 843 beyond a reasonable doubt.  The OCCA stated that included among those elements that the acts be committed in a willful or malicious manner. Id. at 228.  Further, the OCCA, in Workman, cited to Drew and held that "the intent for 701.7(C) is found in § 843 under the *general intent* of 'willfully' or 'maliciously'." Workman, 824 P.2d at 383 (emphasis added).

Petitioner also claims that if the Oklahoma decisions of Hockersmith and Bannister represented a new rule of law, he is entitled to the same treatment as the appellants in those cases, and refusal to do so constitutes disparate treatment of a "class" of similarly situated litigants contrary to Griffith v. Kentucky, 479 U.S. 314 (1987), and in violation of his equal protection rights.  The issue in Griffith was "whether the ruling in Batson [v. Kentucky, 476 U.S. 79 (1986)] applies retroactively to a federal conviction then pending on direct review." Id. at 320.  Griffith involved the application of a newly declared constitutional rule for conduct in criminal prosecutions regarding a criminal defendant establishing a prima facie

12

case of racial discrimination based on a prosecutor's use of peremptory challenges. Id. at 316. The similarly situated litigants in Griffith were defendants in new cases and on direct appeal review after the pronouncement of the new constitutional procedural rule. Id. at 323.

The instant case involves a decision of the OCCA analyzing and interpreting its own substantive state law and not the application of a new constitutional rule to the procedure for criminal prosecutions.  It is not this Court's task to "rewrite or vigorously defend" the State Court's decision, nor is the Court required to conclude the decision was correct. McDonald, 962 F.2d at 1462.  "The question is simply whether that decision was unforeseeable under the standards" pronounced by the Tenth Circuit and the Supreme Court. Id.  Petitioner has not demonstrated his due process rights were violated by an absence of fair warning or that the OCCA's determination was a new definition of child abuse murder given retroactive effect.  Nor has the Petitioner demonstrated that his equal protection rights were violated by the OCCA's determination of his claims.  Petitioner has failed to demonstrate the OCCA's determination to be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Accordingly, Petitioner's first ground for relief is denied.

Ground 2:      Requisite Mens Rea for Sentence of Death.

In his second ground for relief, Petitioner claims the OCCA's attenuation of the mens rea requirement for child abuse murder moved the crime out of the categories of crimes for which a death sentence may be constitutionally imposed.  More specifically, Petitioner argues that the Supreme Court felony murder cases of Enmund v. Florida, 458 U.S. 782

13

(1982), and <u>Tison v. Arizona</u>, 481 U.S. 584 (1977) prohibit an imposition of a penalty of death absent an additional culpability finding, and that no such finding was made in his case by the jury or the courts.

Petitioner raised this claim on direct appeal, arguing that a sentence of death for murder of a child which requires only an intent to injure, but not an intent to kill, violates the Eighth and Fourteenth Amendments of the Constitution and is contrary to the Supreme Court's holdings in the <u>Enmund</u> and <u>Tison</u>.  The OCCA held that a defendant convicted of first degree murder of a child by willful injury or by the willful use of unreasonable force may be death eligible.  <u>Fairchild</u>, 998 at 631.  The OCCA stated:

> Where a defendant personally, willfully commits an act which produces an injury upon a child resulting in the death of the child, or uses unreasonable force upon a child resulting in the death of the child; and if additionally one or more of the statutory aggravating circumstances is proven which outweighs the mitigating circumstances, if any; then that defendant may be sentenced to death.

<u>Id.</u>

This identical issue has been addressed by the Tenth Circuit in <u>Workman v. Mullin</u>, 342 F.3d 1100 (10th Cir. 2003).  In <u>Workman</u>, the petitioner was convicted of first-degree child abuse murder and sentenced to death.  The petitioner argued, as does Petitioner here, that the jury was not required to make a finding as to his culpability for the death of the child such that he could be eligible for the death penalty.  The Tenth Circuit explained that <u>Enmund</u> dealt with two subsets of felony murders - a participant in a felony who neither killed, intended to kill, or was found to have any culpable mental state, and a felony murderer

who actually killed, attempted to kill, or intended to kill. Id. at 1111.  The Tenth Circuit then determined that Workman's crime fell into the category of "cases under Enmund in which a felony murderer has 'actually killed' his victim." Id. (citing Tison, 481 U.S. at 150.)  "We now hold that the constitutional check that Enmund, and certainly that Tison, represent is satisfied in felony murder cases in which the defendant actually killed his victim." Id. at 1114.

> We hold that no further analysis is required by a court under Enmund or Tison because the Eighth Amendment is not offended in this case of felony murder after the jury's finding that Workman actually killed his victim. Enmund, 458 U.S. at 801, 102 S.Ct. 3368, accord Revilla v. Gibson, 283 F.3d 1203, 1211 (10th Cir. 2002) (noting that Enmund restricted the imposition of the death penalty only on defendants who "aid[ ] and abet[ ] a felony in the course of which a murder is committed by others but *who do*[ ] *not* [*themselves*] *kill*.") (emphasis added).

Id. (footnotes omitted).  See also Malicoat v. Mullin, 426 F.3d 1241, 1254-55 (10th Cir. 2005).

The jury determined that Petitioner actually killed Adam Broomhall.  The Tenth Circuit's precedent forecloses Petitioner's argument on this issue, and no further analysis is required under Enmund or Tison, as the Eight Amendment is not offended by the imposition of a sentence of death under such circumstances.  Additionally, Petitioner has failed to demonstrate that the OCCA's resolution of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. §2254(d)(1).  Accordingly, Petitioner's second ground for relief is denied.

Ground 3:      Voluntary Intoxication Defense and Lesser Included Offense Instructions.

In his third ground for relief, Petitioner claims the jury was not given the option of finding him guilty of the lesser included offenses of "second-degree murder due to voluntary intoxication", or of second-degree manslaughter, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, and contrary to Beck v. Alabama, 447 U.S. 625 (1980).

The Due Process Clause of the Fourteenth Amendment ensures that "a sentence of death [may not] . . . be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." Beck v. Alabama, 447 U.S. 625, 627 (1980).  Due process does not require the jury to be instructed on every non-capital lesser-included offense supported by the evidence. Schad v. Arizona, 501 U.S. 624, 646 (1991).  However, a jury may not be placed in "an all-or-nothing position" when the evidence supports a third option. Id.  Whether one state offense is a lesser-included offense of another offense is a question of state law. See Hopkins v. Reeves, 524 U.S. 88, 96-98 & n. 6 (1998); Darks v. Mullin, 327 F.3d 1001, 1008 (10th Cir.), cert. denied, 540 U.S. 968 (2003).

The OCCA denied Petitioner's claim on appeal:

Appellant also argues in Proposition II the trial court committed reversible error by denying his requested instruction on second-degree murder due to voluntary intoxication.  Voluntary intoxication may be a valid defense to those crimes that include an element of specific intent.  As First Degree Murder of a Child (§ 701.7(C)) by means of the willful use of unreasonable force or by willful injuring does not include an element of specific intent, voluntary intoxication is not a defense to it.  The trial court correctly refused to give instructions on lesser included offenses as none were called for by the evidence. Shrum v. State, 1999 OK CR 41, ¶ 10, 991 P.2d 1032, 70 OBJ 3268,

3269.

Fairchild, 998 P.2d at 627.

It should first be noted that under 28 U.S.C. § 2254(e)(1), the Court "must afford a presumption of correctness to any factual findings underlying the conclusion that the evidence was insufficient to justify lesser included offenses instructions." Boyd v. Ward, 179 F.3d 904, 915 (10th Cir. 1999). Here, the OCCA determined that because the supporting evidence was insufficient, the trial court correctly refused to give lesser included offense instructions. The OCCA also determined that although voluntary intoxication may be a defense to crimes including an element of specific intent, it was not a defense to the general intent crime of child abuse murder. Petitioner states there is no question that he was entitled to voluntary intoxication instructions and the accompanying lesser included offense instructions under Oklahoma law at the time of trial. Petitioner's statement is unsupported and incorrect. The OCCA has held, prior to Petitioner's trial, that voluntary intoxication was not a defense to a general intent crime. See Boyd v. State, 572 P.2d 276, 278-79 (Okla. Crim. App. 1977)(defendant's crime of rape was a general intent crime and no error in refusing to instruct on voluntary intoxication); Kreijanovsky v. State, 706 P.2d 541 (Okla. Crim. App. 1985)(voluntary intoxication defense not available to charge of arson in that specific intent not an element of arson.)

Petitioner relies on the unpublished OCCA opinion of Evans v. Oklahoma, F-1997-1215 (Okla. Crim. App. 2000)(unpublished disposition), to support his contention that lesser included offense instructions are appropriate to the charge of child abuse murder when

17

supported by the evidence.  Petitioner's reliance on <u>Evans</u> is misplaced.  Apart from being

an unpublished opinion without precedential effect, the Summary Opinion on Rehearing in

<u>Evans</u> left its original holding regarding lesser included offenses intact because the state had

not requested rehearing on the issue.  The OCCA stated the original holding found that the

lesser offenses in Evan's trial were supported by the evidence. <u>Id.</u> at 5.  In the instant case,

the OCCA found that the evidence did not warrant instructions on lesser included offenses.[7]

> To the extent [Petitioner] argues the state court erroneously interpreted
> and applied state law, that does not warrant habeas relief, see <u>Estelle v.</u>
> <u>McGuire</u>, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), absent a
> determination that the state law violation rendered the trial fundamentally
> unfair. See <u>Tyler v. Nelson</u>, 163 F.3d 1222, 1227 (10th Cir.1999).

<u>Boyd v. Ward</u>, 179 F.3d at 916.

For the reasons set forth herein and contained in the Court's Opinion regarding

Petitioner's first ground for relief, supra, the Court does not find a state law violation

rendering Petitioner's trial fundamentally unfair.  Petitioner has failed to demonstrate the

OCCA's determination was either contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court.  Accordingly, Petitioner's third

ground for relief is denied.

<u>Ground 4:</u>      <u>Speedy Trial</u>.

In his fourth ground for relief, Petitioner asserts he was deprived of his constitutional

right to a speedy trial by the State's belated filing immediately prior to a second summary

---

[7]  The <u>Evans</u> opinion was subsequent to the murder of Adam Broomhall and Petitioner's
1996 trial.

preliminary hearing of a second page to the Information and a Bill of Particulars.  Petitioner

claims this action by the State forced him to acquiesce in continuances in order to adequately

prepare for a capital trial, creating a violation of his speedy trial rights.

On appeal, Petitioner raised a claim that the Bill of Particulars should not have been

allowed by the trial court because the State failed to file it prior to or at the arraignment as

required by state law.  Although not condoning the late filing of the Bill of Particulars, the

OCCA denied his claim, finding that the granting of a continuance of the trial cured any error

by providing Petitioner adequate time to prepare for trial.  Fairchild, 998 P.2d at 616.  In a

sub-proposition to that claim on appeal, Petitioner claimed he was denied a speedy trial

because of the late filing of the Bill of Particulars, arguing his trial was delayed by a year and

a half.  In its analysis, the OCCA found:

> In a sub-proposition which we failed to address in our original Opinion,
> Appellant claims he was denied a speedy trial by the late filing of the Bill of
> Particulars.  He claims that this delayed the trial for a year and a half.  We find,
> however, that much of the delay was not caused by the late filing.   In
> considering his claim, we must consider the causes for the delay, the length of
> delay, whether the Appellant acquiesced in or contributed to the delay, and
> whether Appellant was prejudiced by the delay.  Barker v. Wingo, 407 U.S.
> 514, 529-536, 92 S.Ct. 2182, 2191-95, 33 L.Ed.2d 101, 117-18 (1972); Rainey
> v. State, 1988 OK CR 65, ¶ 3, 755 P.2d 89, 90.
>
> Appellant changed lawyers three times during that period, and each new
> lawyer needed adequate time to prepare for trial.  Also, just days before the
> November 26, 1994, jury trial setting, Appellant's attorney filed an application
> to determine Appellant's competency.  As a result, the case was continued.
> This resulted in several months delay, as the competency determination and
> post-examination competency hearing was not concluded until April 26, 1995.
>
> Further, although Appellant claims he was "extremely prejudiced" by
> delay in the trial, he fails to demonstrate that prejudice.  He claims he was not

19

only "deprived of the counsel of his choosing, he was subjected to the death penalty and actually sentenced to die." He says nothing more about deprivation of counsel and therefore completely fails to explain or support that part of his assertion.

His claim that he was prejudiced because he was sentenced to death is wrong. To prevail with this argument he would have to show that improper delay caused the sentence. It did not. If he meant that the filing of the Bill of Particulars was a necessary, antecedent condition to his receiving the death penalty, he would be correct; but this would be true regardless of when it was filed. The delay did not cause the particular sentence imposed. The sentence of death resulted from the law, the facts, and the jury's decision in this case - not from a denial of speedy trial.

Considering that the length of time from the filing of charges to completion of trial was not inordinate, that Appellant contributed to the delay, and that he has shown no resulting prejudice from delay, we reject his proposition of error and find that he was not denied his constitutional right to a speedy trial. Simpson v. State, 1982 OK CR 35, ¶¶ 3-7, 642 P.2d 272, 274-75 (Simpson created further delay by filing his motion for psychiatric examination and commitment); Stohler v. State, 1988 OK CR 52, ¶¶ 4-5, 751 P.2d 1087, 1088-89 (Stohler was held in jail over three years before he was convicted).

Id. at 616-17.

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court identified a balancing test necessary for the courts to address Sixth Amendment speedy trial claims. The Supreme Court identified the four factors as: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530 (footnote omitted). None of these factors alone is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Because the OCCA identified the appropriate legal principle in determining whether

Petitioner was denied his right to speedy trial, this Court's review is restricted to whether the

state court's application was unreasonable. 28 U.S.C. § 2254(d)(1).

### A. Length of Delay

The first factor, length of delay, is a dual inquiry:

> First, as a threshold matter, only if the delay is "presumptively prejudicial"
> need we inquire into the remaining Barker factors. Barker, 407 U.S. at 530, 92
> S.Ct. 2182.  Second, "[i]f the accused makes this showing, the court must then
> consider, as one factor among several, the extent to which the delay stretches
> beyond the bare minimum needed to trigger judicial examination of the claim."
> Doggett [v. United States], 505 U.S. [647,][] 652 [(1992)], 112 S.Ct. 2686.
>
> In examining the first prong of the delay factor, the Supreme Court has
> stated that "[d]epending on the nature of the charges, the lower courts have
> generally found postaccusation delay 'presumptively prejudicial' at least as it
> approaches one year." Doggett, 505 U.S. at 652 n. 1, 112 S.Ct. 2686.  The
> general rule is that the speedy trial right attaches when the defendant is
> arrested or indicted, whichever comes first. United States v. Marion, 404 U.S.
> 307, 320-21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004).

In the instant case, the State filed the Information on November 18, 1993.  Petitioner's

trial began on January 8, 1996, over two years after the filing of the Information.  This delay

is clearly sufficient to require consideration of the remaining Barker factors. Doggett v.

United States, 505 U.S. 647, 652 (1992).  Further, as two years is twice as long as the "bare

minimum" for "judicial examination of the claim", consideration on the second part of the

delay inquiry convinces the Court to weigh this factor in Petitioner's favor. Id.; Jackson, 390

F3d at 1261 (four and one third year delay far exceeds bare minimum and weighs in favor

of defendant).

B. Reason for the Delay

Petitioner claims the State was negligent and in "bad faith", causing delays in his trial by failing to promptly charge the matters in the second page of the Information earlier and by filing a Bill of Particulars after time had expired under state law. Petitioner claims the State has not denied it was at least negligent and that it had no good reason for the delay. Respondent asserts that Petitioner has not demonstrated the State acted in bad faith or that it was a deliberate attempt to hamper the defense. Respondent further claims, apparently as its justification for the delay, that the Petitioner acquiesced in the continuances, and even caused some of the continuances, and that such delays should not be attributable to the prosecution for speedy trial analysis.

"The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims." Id. at 1261 (citing Barker, 407 U.S. at 531). The OCCA determined that Petitioner contributed to the delay by changing attorneys three times and by filing a last minute application for determination of competency just days before the November 1994 trial date. Petitioner attributes these occurrences on the State's action of filing an out of time Bill of Particulars.[8]   Respondent has offered no explanation for the delay in filing the second page of the Information and the Bill of Particulars. The record

---

[8]   The Bill of Particulars was filed June 3, 1994 (O.R. 148). On November 18, 1994, ten days before the scheduled trial date, Petitioner's second attorney filed an entry of appearance (O.R. 268), an application to determine Petitioner's competency (O.R. 242), and more than twenty additional motions (O.R. 189-272.) Later, in May of 1995, Petitioner's second attorney filed an application to withdraw (O.R. 469), and on July 17, 1995, Petitioner's third counsel filed an entry of appearance (O.R. 471) and more than thirty motions, several identical to the motions previously filed by Petitioner's second attorney. (O.R. 473-606.)

does reflect, however, that despite Petitioner's assertions to the contrary, several months of delay were attributable to his counsels' actions independent of the time of filing of the Bill of Particulars.  Petitioner has not asserted or demonstrated whether these actions by his attorneys would or would not have occurred had the Bill of Particulars been timely filed, nor has Petitioner alleged any tactical advantage gained by the State as a result of the delay.  Although delay in the trial has not been objectively justified by the State, consideration of all the events mandates that this factor should be weighed less heavily against it.

## C.  Assertion of the Speedy Trial Right

Petitioner concedes the record does not reflect that he affirmatively asserted his right to a speedy trial, but claims that since he was incarcerated his demand for a speedy trial is automatic, citing to the state case of Brauhaus v. State, 532 P.2d 434, 440 (Okla. Crim. App. 1975).  In Brauhaus, the OCCA recognized that prior state cases held that a defendant not out on bail has his demand for trial made for him by law.  The court also recognized, however, that Barker had held that a defendant's assertion of his right is a distinct factor to be considered[9], and that the OCCA's prior approach had "effectively eliminated a consideration of the defendant's assertion of his right where he has been held in jail pending bond, when

---

[9]     The more serious the deprivation, the more likely a defendant is to complain.  The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.  *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial*.

Barker, 407 U.S. at 531-32 (emphasis added).

pretrial incarceration must be considered in connection with prejudice anyway." Id. at 441.

Here, Petitioner did not affirmatively assert his right to a speedy trial. Although the late filing of the Bill of Particulars obviously necessitated the need for a continuance of the original trial date, the length of time from the filing of the Bill of Particulars to the date of trial was also, at least partially, contributed to by Petitioner's application for a competency examination and multiple changes of counsel - together with the preparation time necessary for each new attorney.[10] Further, although a large number of pre-trial motions were independently filed by two of Petitioner's attorneys, many of which appeared "standard" or "stock" motions, neither included a demand for a speedy trial. As Petitioner did not make an assertion of this right, this factor weighs against him in the balancing analysis.

### D.  Prejudice

Petitioner claims that the length of the delay was enough to establish presumptive prejudice and that had the proceedings in the case not been delayed, the State could not have obtained and enforced a death penalty against him. The OCCA determined that the delay did not cause Petitioner's particular sentence, but that it was the result of the law, the facts and the jury's decision.

In Doggett v. United States, 505 U.S. 647 (1992), the Supreme Court held that a delay of eight and one-half years between the defendant's indictment and his arrest violated his

---

[10]  The record is unclear as to why several months passed between the trial court's order for competency examination dated November 23, 1994 (O.R. 300), and the Determination of Competency to Stand Trial Psychiatric Evaluation dated March 1, 1995 (O.R. 451-454). The evaluation report states the trial court's Order was received on February 22, 1995, and that Petitioner was examined on February 28, 1995. (O.R. 452.)

Sixth Amendment right to a speedy trial.  The Supreme Court held that the fourth <u>Barker</u>

factor of prejudice could be met in two ways: with or without a particularized showing of

prejudice:

> As an alternative to limiting <u>Barker</u>, the Government claims Doggett has failed
> to make any affirmative showing that the delay weakened his ability to raise
> specific defenses, elicit specific testimony, or produce specific items of
> evidence.  Though Doggett did indeed come up short in this respect, the
> Government's argument takes it only so far: consideration of prejudice is not
> limited to the specifically demonstrable, and, as it concedes, Brief for United
> States 28, n. 21; Tr. of Oral Arg. 28-34 (Feb. 24, 1992), affirmative proof of
> particularized prejudice is not essential to every speedy trial claim. <u>See</u> <u>Moore</u>,
> <u>supra</u>, 414 U.S., at 26, 94 S.Ct., at 189; <u>Barker</u>, <u>supra</u>, 407 U.S., at 533, 92
> S.Ct., at 2193.  <u>Barker</u> explicitly recognized that impairment of one's defense
> is the most difficult form of speedy trial prejudice to prove because time's
> erosion of exculpatory evidence and testimony "can rarely be shown." 407
> U.S., at 532, 92 S.Ct., at 2193.  And though time can tilt the case against either
> side, <u>see id.</u>, at 521, 92 S.Ct., at 2187; <u>Loud Hawk</u>, <u>supra</u>, 474 U.S., at 315,
> 106 S.Ct., at 656, one cannot generally be sure which of them it has prejudiced
> more severely.  Thus, we generally have to recognize that excessive delay
> presumptively compromises the reliability of a trial in ways that neither party
> can prove or, for that matter, identify.  While such presumptive prejudice
> cannot alone carry a Sixth Amendment claim without regard to the other
> <u>Barker</u> criteria, <u>see</u> <u>Loud Hawk</u>, <u>supra</u>, at 315, 106 S.Ct., at 656, it is part of
> the mix of relevant facts, and its importance increases with the length of delay.

<u>Id.</u> at 655-56.

"In case of extreme delay, criminal defendants need not present specific evidence of

prejudice.  Instead, they may rely on the presumption of prejudice created by the delay."

<u>Jackson v. Ray</u>, 390 F.3d 1254, 1263 (10th Cir. 2004)(<u>citing Doggett</u>, 505 U.S. at 655).  The

Tenth Circuit, in <u>Jackson</u>, held that on habeas review the inquiry is limited to whether the

delay is contrary to clearly established Supreme Court precedent, <u>Id.</u> at 1264 n.1., and that

because the delay was less than six years, clearly established Supreme Court law did not

require application of the <u>Doggett</u> rule.[11] <u>Id.</u> at 1264.  As twenty-five to twenty-six months is considerably less than the six years established by the Supreme Court, the OCCA's determination cannot be said to be contrary to clearly established federal law necessary for relief under 28 U.S.C. § 2254(d)(1).  Petitioner must, therefore, make a particularized demonstration of prejudice.

The OCCA determined that Petitioner failed to demonstrate that he was prejudiced by the delay.  <u>Fairchild</u>, 998 P.2d at 617.  To assess whether Petitioner has made a particularized showing of prejudice, the <u>Barker</u> court identified three interests for consideration that the speedy trial right was designed to protect: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." <u>Barker</u>, 407 U.S. at 532; <u>Jackson</u>, 390 F.3d at 1264.  The most important interest is impairment to the defense.  <u>Id.</u>  "The burden of showing all types of prejudice lies with the individual claiming the violation and the mere 'possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated.'" <u>Jackson</u>, 390 F.3d at 1264 (<u>quoting</u> <u>United States v. Loud Hawk</u>, 474 U.S. 302, 315 (1986)).

As stated previously, Petitioner has not asserted any particular prejudice resulting from the delay other than to allege that without the delay the State could not have obtained

---

[11] "When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, see n. 1, supra, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, e.g., 407 U.S., at 534-536, 92 S.Ct., at 2194-2195, nor persuasively rebutted, the defendant is entitled to relief. <u>Doggett</u>, 505 U.S. at 658 (footnotes omitted).

and enforced the death penalty.  Petitioner has not shown that the interests identified in

Barker for which the speedy trial right were designed to protect have been infringed upon.

Most importantly for habeas review, Petitioner has not demonstrated the OCCA's

determination to be contrary to, or an unreasonable application of, clearly established federal

law as determined by the Supreme Court.  28 U.S.C. § 2254(d); Jackson, 390 F.3d at 1266-

67.  Accordingly, Petitioner's fourth ground for relief is denied.

Ground 5:      Especially Heinous, Atrocious, or Cruel Jury Instruction.

     In his fifth ground for relief, Petitioner claims an error in the especially heinous,

atrocious, or cruel aggravating circumstance instruction mandated a finding by the jury and

amounted to a directed verdict by the trial court.  Instruction Number 4 of the second stage

jury instructions given by the trial court provided:

> You are instructed that, in arriving at your determination of punishment,
> you must first determine whether at the time this crime was committed.  The
> following aggravating circumstance existed beyond a reasonable doubt:
>
> 1.      The murder was especially heinous, atrocious, or cruel.

(O.R. 752.)[12]  Petitioner claims that by inserting a period after the word "committed" and

capitalizing the next word, the trial court created a new sentence that directed the finding of

the sole aggravating circumstance.

     The instruction was not objected to at trial.  The OCCA reviewed Petitioner's claim

---

[12]  The first sentence of OUJI-CR 435 provided: "You are instructed that, in arriving at your
determination of punishment, you must first determine whether at the time this crime was committed
the following aggravating circumstance existed beyond a reasonable doubt."

on appeal for plain error:

> Appellant's Proposition X complains of erroneous punctuation in second-stage jury Instruction Number 4.  When the trial court instructed the jury on its duty to determine whether the "especially heinous, atrocious or cruel" aggravating circumstance existed, it gave the following erroneous instruction:
>
> "You are instructed that, in arriving at your determination of punishment, you must first determine whether at the time this crime was committed. The following aggravating circumstance existed beyond a reasonable doubt:
> "1. The murder was especially heinous, atrocious or cruel."
>
> The first sentence is flawed grammatically as a period was inserted in the sentence after the word "committed," and this was followed by a capitol "T" in "The," indicating a new sentence.  The Appellant argues the punctuation error caused the trial court to advise the jury that the aggravating circumstance in fact existed beyond a reasonable doubt, rather than directing the jury to decide the question.  No contemporaneous objection was lodged, so we examine this question for plain error. Perry v. State, 1995 OK CR 20, ¶ 42, 893 P.2d 521, 531.  We note that when read aloud, the break in the sentence is not easily detected.
>
> When we read the instructions as a whole, we find Instructions Numbered 6, 10, and 11 all instructed the jury it must decide whether the aggravating circumstance existed beyond a reasonable doubt, and that its decision must be unanimous.  Because the instructions as a whole properly instruct the jury, we find there is no plain error.

Fairchild, 998 P.2d at 628-29.

Petitioner asserts that since the OCCA did not cite to or apply any federal law, that

this Court has nothing on which to defer.  This assertion is, however, incorrect:

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Avoiding these pitfalls does not require citation of our cases-indeed,

it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

Early v. Packer, 537 U.S. 3, 8 (2002).

In Estelle v. McGuire, 502 U.S. 62 (1991), the petitioner claimed a jury instruction given by the trial court amounted to a propensity instruction, telling the jury to find that he had committed prior offenses and leaving the jury with the mistaken impression that it could find guilt solely on the fact that he had previously harmed the victim.  Id. at 71.  The Supreme Court reiterated that the fact an instruction was allegedly incorrect under state law was not a basis for habeas relief.  Id. at 71-72.  The Court stated that the question was "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  It added that the instruction must be considered in the context of the instructions as a whole and the trial record, and that in reviewing an ambiguous instruction, the inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution." Id. (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).[13]  The Supreme Court found that to the extent the jury may have believed the petitioner committed the prior bad acts and used that as a factor in its deliberation, there was sufficient evidence to sustain such a finding by the jury. Id. at 73. The Supreme Court also found that while the instruction was not as clear as it might have

---

[13]  The Supreme Court also noted its previous admonition that it has defined the category of infractions that violate fundamental fairness very narrowly. Estelle, 502 U.S. at 72 (citing Dowling v. United States, 493 U.S. 342, 352 (1990).  "'Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' Ibid." Id. at 73.

been, there was not a reasonable likelihood that the jury would have concluded that the instruction, when read as a whole with the other instructions, authorized the use of propensity evidence "pure and simple." Id. at 74-75 (citations omitted).  See also United States v. Hall, 325 F.3d 980 (8th Cir. 2003)("impossible to see" how jury could have applied instructions unconstitutionally when instruction including scrivener's error of the word "must" was viewed in context with other instructions).

In its review of Petitioner's claim regarding the contested jury instruction, the OCCA additionally considered jury instructions numbered 6, 10, and 11.  These instructions informed the jury as follows:

## Instruction Number 6

Aggravating circumstances are those which increase the guilt or enormity of the offense.  In determining which sentence you may impose in this case, you may consider only the aggravating circumstance set forth in these instructions.

*Should you unanimously find that the aggravating circumstance existed beyond a reasonable doubt*, you would be authorized to consider imposing a sentence of death.

*If you do not unanimously find beyond a reasonable doubt that the aggravating circumstance existed*, you are prohibited from considering the penalty of death.  In that event, the sentence must be imprisonment for life or imprisonment for life without parole.

(O.R. 754)(emphasis added).

## Instruction Number 10

*If you unanimously find that the aggravating circumstance existed beyond a reasonable doubt*, unless you also unanimously find that any such aggravating circumstance outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

(O.R. 759)(emphasis added).

Instruction Number 11

*If you unanimously find that the aggravating circumstance existed beyond a reasonable doubt*, the law requires that you reduce such findings to writing by stating specifically that the aggravating circumstance existed. This finding must be made a part of your verdict.

You must indicate this finding by checking the box next to such aggravating circumstance on the appropriate verdict form furnished you, and such verdict form must be signed by your foreman.

The law does not require you to reduce to writing the mitigating circumstances you find, if any.

(O.R. 760)(emphasis added).

The challenged instruction, as punctuated, truncates and leaves the first sentence incomplete and nonsensical. In the context of the entire instructions, the jury was informed that if must find whether the aggravating circumstance existed beyond a reasonable doubt, and it was presented with only one aggravating circumstance to consider. The entire instructions, considered together with the prosecutor's statements in closing arguments that the State bore the burden of proof, and that the jury had to determine if the aggravating circumstance existed beyond a reasonable doubt (Tr. Vol. VI, pp. 1386, 1388, 1390, 1391, 1396, 1399, 1425, 1452, and 1454), as well as defense counsel's similar statement (Tr., Vol. VI, p. 1403), do not demonstrate the one contested instruction so infected the entire trial that the conviction violated due process. Nor do they demonstrate a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. Petitioner has not demonstrated the OCCA's determination to be unreasonable. Accordingly, Petitioner's fifth ground for relief is denied.

<u>Ground 6:</u>      <u>Constitutionality of the Especially Heinous, Atrocious, or Cruel Aggravating</u>
                <u>Circumstance.</u>

In his sixth ground for relief, Petitioner claims that Oklahoma's especially heinous, atrocious, or cruel aggravating circumstance is unconstitutional because it was not properly defined or narrowed, and because the jury was not informed that undue conscious physical or mental suffering was required to show serious physical abuse.

On appeal, the OCCA rejected Petitioner's challenge that the especially heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague. The OCCA noted that this instruction had been repeatedly upheld and Petitioner's argument repeatedly rejected. <u>Fairchild</u>, 998 P.2d at 629 (citations omitted). The instruction given in Petitioner's case is identical to the instruction challenged in <u>LaFevers v. Gibson</u>, 182 F.3d 705 (10th Cir. 1999), and found by the Tenth Circuit to be constitutional. <u>Id.</u> at 720-21. The Tenth Circuit has repeatedly upheld Oklahoma's especially heinous, atrocious, or cruel aggravating circumstance against vagueness challenges. <u>See</u> <u>Miller v. Mullin</u>, 354 F.3d 1288, 1300 (10th Cir. 2004); <u>Workman v. Mullin</u>, 342 F.3d 1100, 1115 (10th Cir. 2003); <u>Romano v. Gibson</u>, 239 F.3d 1156, 1176 (10th Cir. 2001); <u>Thomas v. Gibson</u>, 213 F.3d 1213, 1226-29 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000); <u>Moore v. Gibson</u>, 195 F.3d 1152, 1175-76 (10th Cir. 1999); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1274 (10th Cir. 1999); <u>Hooks v. Ward</u>, 184 F.3d 1206, 1239-40 (10th Cir. 1999); <u>LaFevers v. Gibson</u>, 182 F.3d 705, 721 (10th Cir. 1999); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 793 (10th Cir. 1998); <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1352-54 (10th Cir. 1997).

The Tenth Circuit's precedent forecloses Petitioner's argument on this issue. Additionally, Petitioner has failed to demonstrate that the OCCA's resolution of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. §2254(d)(1). Accordingly, Petitioner's sixth ground for relief is denied.

Ground 7:     Ineffective Assistance of Trial and Appellate Counsel.

In his seventh ground for relief, Petitioner claims his trial counsel knew or should have known of Petitioner's potential organic brain damage and was ineffective for failing to investigate and develop this information further.  Because he did not assert this or any other ineffective assistance of trial counsel claim on direct appeal, the OCCA determined he had waived the claim and was procedurally barred under 22 O.S. § 1089(C) from raising it on post-conviction review.  See Opinion Denying Application for Post-Conviction Relief, Request for Evidentiary Hearing, and Motion for Discovery (Pet. at Appendix C).  In an effort to clear the procedural bar hurdle, Petitioner claimed on post-conviction, as he does here, that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal.  The OCCA considered and rejected Petitioner's argument, stating that Petitioner's failure "to raise these issues at trial or on direct appeal, and failure to explain why he did not, resulted in waiver of those grounds for post-conviction relief." Id. at 10.[14]

_____

[14]  Petitioner also presented a claim in his first proposition on post-conviction that his appellate counsel was ineffective per se because she filed a "Disclaimer by Direct Appeal Counsel". The pleading claimed a lack of resources and stated that she disclaimed any attempt to fully

On habeas review, federal courts will not review claims that have been defaulted in state courts on independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively, demonstrates a fundamental miscarriage of justice. Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner does not claim a fundamental miscarriage of justice, but instead claims ineffective assistance of appellate counsel as cause for the default. Because the OCCA considered Petitioner's claim of ineffective assistance of appellate counsel, the Court must review its determination pursuant to the standards set forth in 28 U.S.C. § 2254(d).

"A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default," Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002), but to meet this standard, Petitioner must satisfy the familiar two-part test for ineffective assistance established in Strickland v. Washington, 466 U.S. 668, 688 (1984). Under Strickland, Petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." Hain v. Gibson, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of Strickland to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue." Id.

"[I]n analyzing an appellate ineffectiveness claim based upon the failure

---

investigate Petitioner's case to discover all information that might support a claim based on facts outside the trial record. The OCCA declined to accept the suggestion that appeal counsel can automatically establish they are ineffective by merely filing such a document. Id. at 4.

to raise an issue on appeal, 'we look to the merits of the omitted issue,' generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance."

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations omitted); accord Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004), cert. denied, 543 U.S. 1154 (2005). Unless appellate counsel was objectively unreasonable in failing to raise the claim, and if so, if there is a reasonable probability that but for counsel's unreasonable failure to raise the claim, the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment. Neill v. Gibson, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001).

Before looking to the merits of the omitted claims here, it must not be forgotten that the OCCA has addressed Petitioner's claim of ineffective assistance of appellate counsel. Title 28 U.S.C. §2254(d), therefore, confines the Court's review to the question of whether that decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Turrentine v. Mullin, 390 F.3d 1181, 1202 (10th Cir. 2004).

Petitioner asserts trial counsel should not have pre-chosen a theory prior to conducting a reasonable investigation.  He claims trial counsel - and appellate counsel - did not investigate and present his history of amateur boxing, repeated head injuries (some resulting

in unconsciousness), and his prior drug use. Petitioner acknowledges this is not a case of no

mitigating evidence being presented at trial, but instead claims this is a case of counsel

failing to fully investigate before litigation decisions and strategies were finalized.

On post-conviction review, the OCCA analyzed Petitioner's claim of ineffective

assistance of trial counsel, despite the fact that the court held the proposition was waived

because it could have been raised on direct appeal. The OCCA gave deference to and found

that the rejection of defense strategies of prior drug use, serious head injuries and boxing

activities was consistent with reasonable trial strategies of competent counsel, and that

Petitioner had presented only mere speculation that these matters were not investigated by

trial counsel or direct appeal counsel. (Pet. at Appendix C, pp. 7-10.)

The Court finds the OCCA's determination to be reasonable. A thorough review of

the trial transcript illustrates that some of the issues raised by Petitioner regarding his past

history and mental condition were testified to at trial. Although these issues and instances

may not have been in as detailed a form or presented at trial in a manner compatible with

Petitioner's present claim, the fact reference was made and testimony received in that regard

lends some support to a determination and deference by the OCCA of trial counsel's

knowledge of the issues and resulting strategic decision.

At trial, Dr. John Smith was called to testify regarding a psychiatric evaluation

preformed on Petitioner shortly before trial. Dr. Smith testified his evaluation was very

adequate and that he had a good idea of Petitioner's brain state at the time of the murder. (Tr.,

Vol. V., pp. 1221-23.)   To arrive at his opinion, Dr. Smith took a social history from

Petitioner and reviewed records provided to him by trial counsel, including police reports and extensive prior psychiatric and social history. (Tr., Vol. V., pp 1223, 1240.)   In addition to testimony regarding Petitioner's lengthy addiction to alcohol and it's effects on his brain, Dr. Smith made references to Petitioner's involvement in barroom fights, loss of control and explosiveness, the death of Petitioner's mother, and Petitioner's term as a Marine that included fights. (Tr., Vol. V., pp. 1226, 1243; Tr., Vol. VI., p. 1269.)   Also included was a reference by Dr. Smith to a history of "periods of consciousness [sic] from fighting." (Tr., Vol. V., p. 1245.)   Petitioner had no evidence of seizure disorders or history of any physical or sexual abuse throughout his childhood. (Tr., Vol. VI., p. 1268.)

Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Petitioner has not demonstrated that trial counsel performance fell below an objective standard of reasonableness, or that but for this alleged error of failing to investigate and develop this information more fully that there is a reasonable probability the outcome of the proceedings would have been different.  Nor has Petitioner demonstrated that but for the fact appellate counsel did not raise the claim, the omitted claim would have resulted in relief on appeal.  Petitioner's seventh ground for relief is denied.

 Ground 8:    Prosecutorial Misconduct.

In his eighth ground for relief, Petitioner claims his due process rights were violated by the prosecutor's improper statements and tactics during the second stage of trial. Petitioner raised these claims on direct appeal, claiming his sentence was the result of passion

and prejudice.  The OCCA denied the claim, stating: "In Proposition XVII, the Appellant argues the death sentence was influenced by passion and prejudice.  We do not find any prejudice or undue passion created by the issues raised by the Appellant." Fairchild, 998 P.2d at 629.

The deferential standard of review under 28 U.S.C. § 2254(d) is required since the OCCA adjudicated Petitioner's prosecutorial misconduct claim on the merits. See Walker v. Gibson, 228 F.3d 1217, 1241 (10th Cir. 2000), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001).  Petitioner does not contend that the prosecutor's misconduct denied him a specific constitutional right.  The appropriate standard for a prosecutorial misconduct habeas claim is "'the narrow one of due process, and not the broad exercise of supervisory power.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)).  Accordingly, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citation omitted).  A prosecutor's improper remarks require reversal of a conviction or sentence only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643, 645 (1974).  The fundamental fairness inquiry requires an examination of the entire proceedings and the strength of the evidence against the petitioner, both as to the guilt stage and the sentencing phase. Id. at 643.

Petitioner first complains that the prosecutor asked questions placing before the jury his alleged sexual advances toward the victim's aunt after a motion in limine had been

38

sustained by the trial court on that issue.  Before trial, Petitioner's counsel made an oral motion in limine regarding allegations that Petitioner fondled or sexually assaulted the victim's aunt, Charity Wade, and regarding an allegation that Petitioner made threats with a baseball bat.  The trial court reserved ruling on the motion until such time as the issues might be presented during the trial. (Tr., Vol. III, pp. 595-600.)  During Ms. Wade's first stage testimony, the trial court sustained the motion in limine. (Tr., Vol. IV, p. 658.)  The prosecutor admonished Ms. Wade regarding the trial court's ruling.  Later, in response to an open ended question, Ms. Wade testified that Petitioner tried to kiss her and that she wouldn't kiss him.  Petitioner's counsel did not object at that time, but objected shortly afterwards in anticipation of testimony pertaining to the baseball bat.  Counsel then moved for a mistrial based on Ms. Wade's testimony about the attempted kisses.  The trial court overruled the motion and denied the motion for mistrial. (Tr., Vol. IV, p. 665-66.)

In the second phase of trial, the prosecutor asked the following questions of the Petitioner:

Q.	And you're aware of why it was that Charity wanted to go home early, are you not?
A.	I believe so.
Q.	It was because you made sexual advances at her, was it not?

(Tr., Vol. VI, pp. 1325-26.) Defense counsel moved for a mistrial.  The trial court denied the motion and admonished the State to avoid the topic of alleged sexual advances.  At defense counsel's request, the trial court then admonished the jury to disregard the prosecutor's question regarding sexual advances and stated that the alleged sexual advances had nothing

39

to do with the trial. Id. at 1327.

Petitioner next contends the prosecutor engaged in misconduct during it's second closing argument of the penalty phase of trial when it "used the promises it extracted from the jury in voir dire to obfuscate and diminish the jury's role in the capital sentencing process." (Pet. at 86.) In support of his argument, Petitioner first contends the prosecutor told the jury that if the death penalty wasn't appropriate they would not be allowed to consider imposing it.   The contested statement, in context and in its entirety, was in response statements by defense counsel during his closing argument:

> Mr. Albert also talks about that his - - he spoke about the fact that his dad was here and that he decided to become a public defender or a public defense lawyer because you can either do things to people or do things for people, as if somehow Ms. Wallace and I ought to be here apologizing to you because we dare to prosecute this defendant for killing Adam Scott Broomhall, and I will not do that.  I will not apologize to you because I stand here asking you to return a verdict of death for what this man did to Adam Scott Broomhall, and I believe and I would submit to you that I'm doing absolutely nothing to this defendant.  I am doing my job.  The law sets out what my job is, the law sets out what Mr. Albert's job is, and I don't have any hesitation or any embarrassment about doing my job, absolutely none, nor do I have any hesitation or any feelings of guilt because I stand here telling you and asking you to sentence this man to death for what he did to Adam Scott Broomhall, because the law tells you it's appropriate and the evidence tells you that that is appropriate, and if it wasn't appropriate, you all would not even be allowed to consider imposition of the death penalty.

(Tr., Vol. VI, pp. 1444-45.)

Petitioner adds that the following statement by the prosecutor is further evidence of misconduct:

> I would submit to you that if there are some of you having doubts, and Mr. Albert said if just one of you, just one of you wants to hold out for some

other sentence, that that - - if there is a person amongst you who feels like, "Boy, I just can't give a death penalty[.]" then, number one, you weren't quite honest with us when you told us during voir dire that you could if it was appropriate, and we relied on the answers that you all gave us in telling us that if it was appropriate, you could do it.  We relied on those answers, and it's too late to change that now, because you're now the 12 people on this panel.

(Tr., Vol. VI, pp. 1480-81.)

Petitioner asserts the prosecutor argued that the death penalty was appropriate because the jury was allowed to consider it, and that because it was appropriate, jurors would be guilty of lying during voir dire if they did not agree to impose it.  He argues that these statements were more egregious than the prosecutor's remarks in Caldwell v. Mississippi, 472 U.S. 320 (1985).  In Caldwell, the prosecutor told the jury not to view itself as determinative of whether the defendant would die because a death sentence would be reviewed for correctness by the State Supreme Court.  The Supreme Court found the prosecutorial remarks sought to give the jury a view of its role that was fundamentally incompatible with the Eighth Amendment.  The Supreme Court held that those remarks urged the jury to see themselves as only a preliminary step toward the actual determination of the appropriateness of the death penalty, a determination which would eventually be made by others and for which the jury was not responsible. Id. at 366, 340.  Here, however, the prosecutor was not diminishing the jury's role or its responsibility.  The prosecutor's remarks were just the opposite, reminding the jury of their ability and commitment to apply the law when appropriate.

Lastly, Petitioner argues the prosecutor informed the jurors that if they did not agree

41

on the death sentence, the judge would not be able to sentence Petitioner to death.   During

second stage closing argument, the prosecutor made the following statement in response to

defense counsel's plea to the jury, asking for at least one of them to hold out against the death

penalty:

> I submit to you that what Mr. Albert is asking someone to do is
> disregard the law and the evidence in this matter and to return a verdict that
> would be easy to do, to hang this jury, to cause this jury not to be able to reach
> a verdict in this case in the punishment phase, and require the Court to make
> that determination, and he cannot give the - -

(Tr., Vol. VI, pp. 1426-27.)  Defense counsel objected and requested a mistrial.  The trial

court overruled the motion, but admonished the prosecutor to not tell the jury what would

happen if it did not reach a decision. Id.

Considering these remarks in context, together with the entire proceedings and the

strength of the evidence against Petitioner, the Court finds that Petitioner has not

demonstrated these remarks by the prosecutor rendered the trial so fundamentally unfair as

to make his conviction and sentence a denial of due process.  It is undisputed that Petitioner

inflicted the injuries that caused the death of Adam Broomhall, and that the injuries were

painful and caused the child conscious pain and suffering before he died.  Petitioner has not

demonstrated the jury's second stage verdict was a result of passion or prejudice flowing

from the alleged improper prosecutorial comments or that the prosecutor's remarks

diminished the jury's role or responsibility.  Petitioner has failed to demonstrate that the

OCCA's determination was contrary to, or an unreasonable application of, clearly established

federal law.  Accordingly, Petitioner's eighth ground for relief is denied.

42

Ground 9:        Failure to Instruct Jury.

In his ninth ground for relief, Petitioner claims there is a substantial likelihood the jurors were confused on key sentencing issues due to the trial court's failure to instruct that the jury was not required to return a sentence of death, even if the aggravating circumstances outweighed mitigating factors.  Petitioner also claims it was error to not inform the jurors that they were not required to be unanimous on the existence of mitigating factors before those factors may be considered against imposing a sentence of death.  Petitioner recognizes that this Court is bound by the prior determination of the Tenth Circuit that the general instructions given to Oklahoma juries do not evoke a reasonable likelihood juries are misapplying the law on these issues.  Duvall v. Reynolds, 139 F.3d 768, 790-92 (10th Cir. 1998).   Petitioner suggests that Duvall was wrongly decided, however, and raises the argument to preserve it.  He claims his case presents a further complication not covered by Duvall, namely, that the misconduct of the prosecutors raised in his eighth ground for relief, and an additional argument by the prosecutor, substantially increased "the potential for juror confusion by misstating the law."

Petitioner claims the prosecutor misstated the law in the second stage of trial when referring to the mitigating circumstances listed in Instruction No. 8.  He assert the prosecutor negated any notion that the jury did not have to unanimously agree on mitigating circumstances by stating "you as a jury have to decide . . . ."  The complained of statement was contained in the following argument:

The determination of what are mitigating circumstances is for you as

> jurors to resolve under the facts and circumstances of this case.  You decide
> what you believe and you decide what you don't believe.  You are not required
> - - because Instruction No. 8 tells you that evidence has been offered on behalf
> of the defendant that this is mitigation, you are not required to believe that, and
> I submit to you you have to go through that list of 13, 14 things, how many
> ever there are, and you as a jury have to decide do you believe that, did you
> hear any evidence or testimony that that in fact happened, and then you've got
> to decide, does that somehow reduce this defendant's blame or culpability for
> what he did to Adam Scott Broomhall?

(Tr., Vol. VI, pp. 1396-97.)

On appeal, the OCCA denied Petitioner's claims, finding that the issues raised regarding second stage instructions had previously been decided against him and would not be revisited.  Fairchild, 998 P.2d at 629.  Respondent argues that Petitioner has not demonstrated the OCCA's determination on the issues regarding errors in jury instructions were contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, and adds that Petitioner's combination of prosecutorial misconduct claims to the second stage jury instruction issues is an unexhausted argument and may not be considered on habeas review.

The Tenth Circuit's precedent precludes Petitioner's claims regarding the jury instructions.  Petitioner does not make any argument which compels or permits this Court to disregard this binding precedent. See United States v. Foster, 104 F.3d 1228 (10th Cir. 1997). As to Petitioner's combination of prosecutorial misconduct and failure to instruct argument, the Court may deny the claim on the merits despite Petitioner's failure to exhaust the claim in state court. 28 U.S.C. § 2254(b)(2). Although the prosecutor may have improperly phrased a portion of her argument and referred to the jury as a whole, the statement considered in

44

context with her other arguments and with the trial court's instructions to the jury convinces the Court that no reasonable juror would have been confused or misdirect to misapply the law.

For the reasons stated herein and those previously stated in reference to Petitioner's eighth ground for relief, the Court finds that Petitioner has not demonstrated a substantial likelihood that the jurors misapplied the law, and finds that there is "no reasonable likelihood that the jury applied these instructions in a way that required them to agree unanimously upon the existence of a mitigating circumstance before considering it" Duvall, 139 F.3d at 792 (see also Cooks v. Ward, 165 F.3d 1283, 1291-92 (10th Cir. 1998)). The jurors were not prevented from considering mitigating circumstances nor required to return a sentence of death upon the finding of aggravating circumstances greater than mitigating circumstances. LaFevers v. Gibson, 182 F.3d 705, 718 (10th Cir. 1999). Petitioner has failed to demonstrate the OCCA's determination to be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, Petitioner's ninth ground for relief is denied.

Ground 10:    Competence to Stand Trial.

In his tenth ground for relief, Petitioner claims his pre-trial competency proceedings were conducted under a standard that required him to prove his incompetence to stand trial by clear and convincing evidence in violation of Cooper v. Oklahoma, 517 U.S. 348 (1996).

Prior to trial, Petitioner's counsel filed an Application for Determination of

Competency.[15] (O.R. 242.)   At the hearing on the application held on November 23, 1994,

the trial court ordered Petitioner to be evaluated and a written report to be submitted to the

court. (O.R. 300-02.)     The evaluating psychologist found that Petitioner was able to

appreciate the nature of the charges against him and was able to consult with his attorney and

rationally assist in the preparation of his defense.     The report further contained the

determination that Petitioner was not mentally ill, but that he would pose a serious threat to

himself or others if released because of a long history of chemical dependence.   The forensic

psychologist recommended that Petitioner's case continue. (O.R. 451-54.)

On April 26, 1995, a motion hearing was held on Petitioner's motions, including his

application for a determination his competency to stand trial.   Petitioner's counsel announced

to the court he had received a copy of the report and that the parties would stipulate the report

reflected the doctor's testimony in the event he was called to testify.   Petitioner's counsel

announced to the trial court that no other evidence would be presented in support of the

position that Petitioner was incompetent.    The trial court questioned Petitioner briefly

regarding the report, then determined from the report and the brief conversation with

Petitioner that he was competent to stand trial. (Tr., Motion Hearing, April 26, 1995, pp. 3-6.)

A "criminal trial of an incompetent defendant violates due process." Medina v.

California, 505 U.S. 437, 453 (1992).   In determining competency to stand trial, the trier of

---

[15] Respondent refers to this Application as a "generic application".  The fact the application
was included together and filed simultaneously with over 30 other motions, and that the body of the
Application contains an individual's name other than Petitioner's, lends some support to
Respondent's characterization.

fact must consider "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960).

The standard in effect in Oklahoma at the time of the competency hearing required defendants to prove their incompetence by clear and convincing evidence. 22 O.S. § 1175.4. Nearly one year after Petitioner's competency hearing, the Supreme Court, in <u>Cooper v. Oklahoma</u>, 517 U.S. 348 (1996), considered the issue of whether a state may proceed with a criminal trial after the defendant had demonstrated that he was more likely than not incompetent.  The Supreme Court held that Oklahoma's scheme of presuming a defendant competent to stand trial unless he proved his incompetence by clear and convincing evidence violated due process. <u>Id.</u> at 369.  The Supreme Court reiterated its previous decision that a state "may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." <u>Id.</u> at 355 (<u>citing</u> <u>Medina v. California</u>, 505 U.S. 437, 449 (1992)).

On appeal, the OCCA determined:

> The trial court granted the defense request for a competency evaluation and held a post-examination competency hearing. 22 O.S.1991, § 1175.4.  In Proposition XVI, Appellant argues he was held to the unconstitutional standard of proving his lack of competency by clear and convincing evidence. <u>See</u> <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).  Fairchild is correct when he asserts this unconstitutional standard was in place at the time of his hearing and that it was applied to him.

> Evidence at the post-evaluation competency hearing consisted of the

47

parties' stipulation that the examining psychologist would testify Fairchild was competent to stand trial as indicated in the report filed with the court. Forensic psychologist Kelly Shannon, Ph.D., reported to the court that Fairchild was able to explain the allegations against him, that he voiced a "favorable opinion" toward his attorney, and had an "average" courtroom knowledge. He had no bizarre perceptions or beliefs regarding the legal process.

The psychologist concluded that in spite of a history of head injuries and chemical dependence, Mr. Fairchild was able to work with his attorney in a rational manner in his own defense. The only evidence supporting a finding of lack of competence came from statements by Fairchild's attorney to the effect he did not believe Fairchild could help adequately with his defense. Counsel gave no factual basis for this opinion, and no other evidence was presented. The trial court found Fairchild competent to stand trial.

Because Fairchild was subjected to the improper standard of proof, and since Appellant waived his right to jury trial on his post-examination competency hearing, this Court will conduct a de novo review on competency using the proper standard of proof. See Ochoa v. State, 1998 OK CR 41, ¶¶ 7-8, 963 P.2d 583, 590-91, and Smith v. State, 1996 OK CR 50, ¶ 11, 932 P.2d 521, 528. The proper standard of proof is a preponderance of the evidence: that more likely than not, Fairchild lacked competence to stand trial. The opinion of counsel, unsupported by any facts, does not meet this burden. Therefore, applying the correct standard of proof, we find Fairchild did not carry his burden to prove incompetence, and he was competent to stand trial.

Fairchild, 998 P.2d at 617-18.

Cooper held a state may not proceed with criminal trial once a defendant has demonstrated that he is "more likely than not" incompetent. The OCCA reviewed the scant evidence offered by Petitioner at his competency hearing and determined that the opinion of counsel, unsupported by any facts, did not demonstrate by a preponderance of the evidence that he was incompetent to stand trial. Petitioner has not demonstrated the OCCA's determination to be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

48

Petitioner claims the OCCA utilized an improper standard in deciding his claim. After Cooper, the Tenth Circuit set forth the standard by which Cooper claims were to be decided:

> "[C]ompetency claims can raise issues of both substantive and procedural due process." Walker v. Att'y Gen., 167 F.3d 1339, 1343 (10th Cir.1999). A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent. Id. at 1343-44. Accordingly, an individual raising a procedural competency claim is held to a lower burden of proof than one raising a substantive competency claim. See id. at 1344.

McGregor v. Gibson, 248 F.3d 946, 952 (2001).

Petitioner claims he was subjected to an unconstitutional standard, making his assertion a procedural competency claim. To succeed on a procedural due process competency claim, Petitioner must raise a bona fide doubt regarding his competency to stand trial at the time of the conviction. Id. at 954. The Tenth Circuit has held that to establish a bona fide doubt, it must be shown that "a reasonable judge should have doubted whether petitioner had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether petitioner had 'a rational as well as factual understanding of the proceedings against him.'" Id. at 954 (quoting Dusky, 362 U.S. at 402.) The Tenth Circuit restated that when a defendant's competency determination was determined under an unconstitutional burden of proof, the prior determination is not given a presumption of correctness, and review of the trial is necessary as if no competency hearing had been held at all. Id. at 952-53. Included in this review is also the evidence and testimony presented during the pre-trial competency hearing. Id. at 954 n. 5.

49

Petitioner argues that although the evidence is insufficient to show he was incompetent at the time of trial, there were significant indicia to raise a bona fide doubt as to his competency: (1) the trial court's observation and finding of doubt in its Order at Hearing of Application for Determination of Competency (O.R. at 300-02.); (2) trial counsel's opinion; and, (3) the psychologist's statements in the report regarding Petitioner's memory difficulties.

The trial court's Order at Hearing of Application for Determination of Competency contains language stating it was determined there was a doubt as to the defendant's present competency.  Petitioner relies on this one portion of the Order to assert it as an actual finding of doubt by the trial court.  Petitioner contends this "finding" is not infected with the improper standard and should be presumed to be correct.  The Order, however, dictated that the Petitioner be evaluated to determine, among other things, whether he could appreciate the nature of the charges against him and was able to consult with his attorney - the very test for incompetence set forth by the Supreme Court in <u>Dusky</u>.  Regardless of which standard was utilized, the trial court's order was prepared without the benefit of the professional evaluation and opinion, and was not a final determination based on facts, professional evaluation, and observation of Petitioner.

Petitioner's attorney's opinion, although relevant to the analysis and determination of Petitioner's competency, is insufficient to meet the bona fide doubt burden in this case. Petitioner's counsel offered no facts or examples to support his statement that Petitioner was not able to assist in his defense.  Review of the entire trial and its proceedings contrast

counsel's unsupported statement.  Arguably contrary to counsel's claim is the fact that Petitioner was later represented by a different attorney shortly before and during trial.  Of the voluminous motions filed by Petitioner's third attorney prior to trial, many of which were repetitious of prior motions previously filed in the case, no motion or application was filed regarding Petitioner's competence.  Further, the record and transcripts are deplete of any assertion by Petitioner's third counsel of Petitioner's incompetence to stand trial, nor is there any reference to any incidents during trial of irrational behavior or demeanor by Petitioner to lend support to second counsel's assertion or to raise a bona fide doubt with the court.

Lastly, Petitioner argues the doctor's statements regarding memory difficulties are further indicia in support of a bona fide doubt of his competency.  In the evaluation report, the evaluating psychologist noted that Petitioner's "memory for immediate, recent and remote events except for times of intoxication appeared intact." (O.R. at 452.)  Although some possible support for Petitioner's argument may be found in that statement,  the Court cannot  ignore the psychologist's finding in the report that Petitioner was aware of the charges against him and was able to assist his attorney in his defense.

Considering the competency hearing and the trial as a whole, Petitioner has not demonstrated that a reasonable judge should have had a bona fide doubt whether he had sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him.  Alternatively, Petitioner has not demonstrated the OCCA's determination to be contrary to, or an unreasonable application of, clearly established federal

law.  Accordingly, Petitioner's tenth ground for relief is denied.

Ground 11:    Failure to Provide Jury Instruction Regarding Life Without Parole.

In his eleventh ground for relief, Petitioner claims the trial court failed to provide

adequate instructions on the life without parole sentencing option, and failed to provide

supplemental information in response to a note from the jury inquiring about the life without

parole sentencing option.[16]  Petitioner argues that the note establishes the jury was confused

about the meaning and significance of the sentencing option, violating Simmons v. South

Carolina, 512 U.S. 154 (1994), and Shafer v. South Carolina, 532 U.S. 36 (2001).

On appeal, the OCCA denied Petitioner's claim, stating:

> The defense requested, and the trial court declined, an instruction on the
> meaning of a life sentence and the meaning of a sentence of life without
> possibility of parole. During deliberations, the jury sent out a note asking
> whether the defendant would ever be released from prison if he were sentenced
> to life without the possibility of parole.  The trial court responded by telling
> the jury it had all the evidence it needed to decide the case.  Appellant claims
> error. (XIV-E)  We find that the trial court ruled properly in its denial of the
> requested instructions and in its response to the jury question, for the court has
> no duty to explain the Oklahoma parole process to the jury.   We have
> previously decided this same issue. Johnson v. State, 1996 OK CR 36, ¶¶
> 51-52, 928 P.2d 309, 320; McGregor v. State, 1994 OK CR 71, ¶ 36, 885 P.2d
> 1366, 1383; Mayes, 1994 OK CR 44, ¶ 148, 887 P.2d at 1319-20.

Fairchild, 998 P.2d at 629.

In Simmons, the Supreme Court held that where a capital defendant's future

---

[16]  The jury actually submitted two questions to the trial court.  They first inquired, if the defendant were to receive the death penalty, how long it would be before he was executed.  The second question was whether or not life without parole meant that the defendant would never be released from incarceration.  The trial court responded to both questions individually with the answer: "You have all of the evidence you need to decide this case." (Tr., Vol. VI, pp. 1484-85.)

dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without the possibility of parole, due process entitles the defendant "to inform the jury of [his] parole ineligibility, either by jury instruction or in arguments by counsel." Shafer, 532 U.S. at 39 (quoting Ramdass v. Angelone, 530 U.S. 156, 165 (2000)).[17] In both Simmons and Shafer, the jury was given only two sentencing options, creating a false impression between sentencing the petitioners to death and sentencing them to a limited period of incarceration. Simmons, 512 U.S. at 161; Shafer, 532 U.S. at 41.

In Mayes v. Gibson, 210 F.3d 1284 (10th Cir. 2000), the Tenth Circuit was presented with an issue identical to Petitioner's instant claim.  In Mayes, the trial court had instructed the jury to choose between life imprisonment, life imprisonment without the possibility of parole, and death.  The Tenth Circuit concluded the "three-way choice fulfills the Simmons requirement that a jury be notified if the defendant is parole ineligible," and denied relief. Id. at 1294; see also McCracken v. Gibson, 268 F.3d 970, 980-81 (10th Cir. 2001).

Subsequent to Mayes, the Tenth Circuit was presented with the argument that the Supreme Court's decision in Shafer undermined its prior determination in Mayes. Smith v. Mullin, 379 F.3d 919 (10th Cir. 2004).  The Tenth Circuit held:

> Given the two-way choice in Shafer, and the clear evidence of jury confusion, that case is distinguishable from our decision in Mayes. Because Mr. Smith's case is identical to Mayes and suffers none of Shafer's identified short-comings, Mr. Smith is not entitled to relief from his sentence on these grounds.

---

[17] In the present case, future dangerousness was not an issue for the jury to determine.  The was presented with only one aggravating circumstance - whether the murder was especially heinous, atrocious, or cruel.

53

Smith, 379 F.3d at 937-38.

The Tenth Circuit's precedent precludes this claim. Petitioner does not make any argument which compels or permits this Court to disregard this binding precedent. See United States v. Foster, 104 F.3d 1228 (10th Cir. 1997). Petitioner has failed to demonstrate that the OCCA's resolution of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. §2254(d)(1). Accordingly, Petitioner's eleventh ground for relief is denied.

Ground 12:   Cumulative Impact of Errors.

In his twelfth ground for relief, Petitioner claims that in the event that any individual error in his case is deemed insufficient to warrant relief, the accumulation of errors in his case so infected the trial and sentencing proceedings with unfairness that he was denied due process of law and a reliable sentencing proceeding in violation of his rights under the Sixth, Eighth and Fourteenth Amendments. (Pet. at 101.) The OCCA considered his claim in Proposition XVIII of Petitioner's direct appeal, and held that "[g]iven the uncontroverted and overwhelming evidence of guilt in this case, these errors, even in aggregate, do not warrant relief." Fairchild, 998 P.2d at 632.

It is true as a general principle of law that "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir.), cert. denied, 119 S.Ct. 197 (1998) (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th

Cir. 1990)).  However, "'[a] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'  The analysis, however, 'should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.'"  Id. (quoting Rivera, 900 F.2d at 1470-71).  See also Newsted v. Gibson, 158 F.3d 1085, 1097 (10th Cir. 1998), cert. denied, 119 S.Ct. 1509 (1999); Castro v. Ward, 138 F.3d 810, 832-33 (10th Cir.), cert. denied, 119 S.Ct. 422 (1998);  United States v. Trujillo, 136 F.3d 1388, 1398 (10th Cir.), cert. denied, 119 S.Ct. 87 (1998).

Upon review of the entire record in this case and the evidence and testimony presented at trial, the Court does not find the cumulation of any errors identified and found by the OCCA or this Court had an effect on the outcome of the trial such that they can no longer be considered harmless.  Petitioner has not demonstrated the OCCA's determination to be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Accordingly, Petitioner's twelfth ground for relief is denied.

### D.      Petitioner's Request for an Evidentiary Hearing.

Petitioner generally requests an evidentiary hearing "as to the Petition as a whole and particularly as to any issues involving facts not apparent from the existing record and to any issues involving facts disputed by the state." (Pet. at 104.)     The first step in deciding whether an evidentiary hearing is warranted is to determine whether Petitioner failed "to develop the factual basis" of his claims in state court.  Williams v. Taylor, 529 U.S. 420

(2000); <u>Miller v. Champion</u>, 161 F.3d 1249, 1253 (10th Cir. 1998); 28 U.S.C.A. § 2254(e)(2).  According to <u>Miller</u>, if "a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply."  <u>Miller</u>, 161 F.3d at 1253.  In other words, if a petitioner diligently sought an evidentiary hearing in state court and his request was denied, the petitioner can not be deemed to have "failed to develop the factual basis" of the claims. <u>Miller</u>, 161 F.3d at 1253.

The Court cannot determine from Petitioner's general request for an evidentiary hearing whether Petitioner has or has not failed to develop the factual basis of his claims in state court.  Assuming, however, Petitioner did not fail to develop the claims, his request for an evidentiary hearing must be governed by pre-AEDPA standards.  <u>Id.</u> at 1249, 1253 (10th Cir. 1998).  Under the pre-AEDPA standards, Petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief."  <u>Id.</u> (citing <u>Medina v. Barnes</u>, 71 F.3d 363, 366 (10th Cir. 1995)).

In his general request, Petitioner does not identify what facts he alleges might be developed that would entitle him to habeas relief, and which issues require additional factual support.  Without such an indication, the Court cannot determine whether Petitioner's allegations are controverted by the existing factual record.  Absent specific allegations, Petitioner's request amounts to mere speculation.  Speculation alone is insufficient to warrant or require an evidentiary hearing.  Accordingly, Petitioner's request for an evidentiary

hearing is denied.

## IV.   **Conclusion**.

After a complete review of the transcripts, trial record, appellate record, record on post-conviction, and briefs filed by Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his *Petition For a Writ of Habeas Corpus by a Person in State Custody Pursuant to Title 28 United States Code, § 2254* (Dkt. No. 15) to be without merit. ACCORDINGLY, habeas relief on all grounds is **DENIED**. A judgment will enter accordingly.

IT IS SO ORDERED this __26th__ day of September, 2006.


RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE